## McCoy et al. vs. State use of Jackson Co.

The county courts have authority and it is their duty to audit the accounts of Internal Improvement commissioners—to order moneys in the hands of a retiring commissioner to be paid over to his successor in office, and in default of such payment to direct suit to be instituted on the official bond.

The entries on the records of the county court of the appearance of the commissioner and the filing of his account, import verity, and their truth cannot be enquired into by the circuit court upon the plea of nul tiel record.

In suits on penal bonds where breaches have been assigned, swearing the jury to inquire into the truth of the breaches is equivalent to swearing them to try the issues, and not liable to objection.

No special demand for payment from a retiring commissioner after such payment has been ordered by the county court, is necessary as preliminary to the institution of suit upon his official bond.

The proper mode of suing upon such bonds is in the name of the State for the use of the counties entitled to the fund.

### Appeal from Jackson Circuit Court.

Hon. William C. Bevens, Circuit Judge.

Stillwell & Woodruff, Watkins & Gallagher, for the appellants.

Swearing the jury to try the truth of the breaches does not include the trial of issues outside of the breaches and is irregular. *Dig.* 646, *sec.* 40; *Ch.* 127; 2 *Ark.* 802.

The record introduced in evidence exhibited no adjudication in the character of a final judgment—a judgment alone imports verity and precludes enquiry. 1 *Greenl. on Ev. sec.* 520, 513.

The adjudication by the county court not being a judgment, the record of its proceedings is no evidence, either of the appearance of McCoy or a settlement with him. 1 *Greenl. Ev. sec.* 527.

OF THE STATE OF ARKANSAS.

McCoy et al. vs. State use of Jackson Co.

The suit on the bond should have been on the relation of the officers or of McCoy. *State vs. Wright*, 8 *Blackf.* 65.

The order to pay over to his successor not being within the judicial authority of the county court a special demand for payment as preliminary to suit on the bond was necessary.

C. F. Hempstead, for the appellee.

The county court had jurisdiction and power to make the settlement with McCoy—McCoy was before them as appears by the record, which imports verity. *Borden vs. State* 6 *Eng.*

Mr. Chief Justice English delivered the opinion of the Court.

This was an action of debt in the name of the State, for the use of Jackson county, upon an internal improvement commissioner's bond. The action was brought against Micajah B. McCoy, the principal in the bond, and Jesse W. Stokes and Charlin Silvy, two of his sureties. The bond bears date 5th of October, 1851, and is conditioned as prescribed by the statute. (Dig. Ch. 104, Art. 9, sec. 21.) The declaration alleges several special breaches of the bond, the same in substance, and differing but little in form.

The substance of the breaches is, that the term of office of McCoy, as internal improvement commissioner of Jackson county, expired on the 15th August, 1856, when Henry H. Miller, who had been elected as his successor in the office, qualified as such. That on that day McCoy was indebted to the county for moneys which had come to his hands as such commissioner in the sum of $1047 89. That afterwards, on the 26th January, 1857, a settlement was had by the county court of said county with McCoy, with respect to said moneys, and the sum aforesaid was found due from him to the county; and he was ordered by the court to pay the same over to Miller, his successor in office, but that he had wholly failed and neglected, though often requested so to do, to pay the same or any part thereof, to Miller or to the county, etc.

**310**      CASES IN THE SUPREME COURT

McCoy et al. vs. State use of Jackson Co.     [OCTOBER

The defendant Stokes made default. Silvey interposed a demurrer to the declaration, which was overruled, and he made no further defence.

The causes of demurrer assigned were, 1st. That the declaration was, in form, in detinue, which could not be maintained on a bond: 2d. That there was no breach alleging the non-payment of the money demanded, in the declaration, to the State.

The first cause assigned is not true in fact; the declaration is in debt, and not detinue. There is nothing in the second cause. The special breaches allege the non-payment of the amount found due from McCoy, on settlement, to his successor in office, or to the county; and the general breach avers the non-payment of the penalty of the bond sued on to the State.

The defendant McCoy interposed seven pleas, in substance as follows:

1. That he has not, and does not detain from the plaintiff said sum of $11,000 (the penalty of the bond) demanded, etc.

2. That he, on the 1st day of January, 1855, fully paid to the State the said sum of $11,000 in the bond mentioned with all interest due thereon.

3. That the said county court did not, on the 26th day of January, 1857, or thereafter, make and enter an order requiring said defendant to pay over to his said successor in office the sum of $5,647 79, as in the first and second breaches alleged—concluding *to the country*.

4. That he was not, on the 15th of August, 1856, indebted, as such commissioner, to the said county, for moneys which came to his hands as such, in the said sum of $5,647 79, or any part thereof, as alleged in the second breach.

5. That on the 26th of January, 1857, a settlement was not had by the said county court, of the accounts of the said defendant as such commissioner, or with the defendant of all sums of money which had come to his hands, as alleged in the first and second breaches—concluding *to the country*.

6. That there is no record of any such settlement, by the said county court, with said defendant, as alleged, etc.

7. That the said settlement alleged to have been had, by the county court, with said defendant, on the 26th January, 1857, was not made with him, nor was it made on a copy from the books of said defendant kept by him as such commissioner; nor did the said county court, in such alleged settlement, audit any such account furnished by defendant; nor had defendant any notice of, or participation in such alleged settlement, in any way whatever; wherefore defendant avers that such alleged settlement is null and void for want of jurisdiction in said court, and not binding upon him, etc.

The plaintiff demurred to the *third, fifth* and *seventh* pleas, and the court sustained the demurrer.

The counsel for M'Coy, here, have not insisted in their argument that the court erred in sustaining the demurrer to these pleas.

The plaintiff took issue to the 6th plea, which was submitted to the court, and on inspection of the record, the court found the issue for the plaintiff.

On the trial of this issue the plaintiff read in evidence, from the records of the county court, entries showing that on the 26th of January, 1857, McCoy, as late internal improvement commissioner, appeared before the court, and filed his account current as such; a statement of his debits and credits, and of the balance of $5,647 79, due from him to the county. Also an order of the court directing Miller, his successor, to call on him to pay over all moneys etc. in his hands, and on his failure to do so, to employ counsel to institute suit against him (see copies of the entries in the case of *McCoy Ex parte* 21 *Ark.*)

McCoy objected to the admission of these record entries on the grounds that they were void, etc.

The county court had jurisdiction, and it was its duty to audit the account presented by McCoy for settlement, and if found correct to approve it, and if not, to cause it to be corrected. See *Gould's Dig. Ch.* 101, *Art.* 3, *sec.* 48. And it was proper for the court to order the moneys, etc., in his hands to be paid over to his successor in office, and that suit be brought against

818                          CASES IN THE SUPREME COURT

                McCoy et al. vs. State use of Jackson Co.          [October

him on his failure, etc., *Ib. sec.* 52.   Such matters belong appropriately to the jurisdiction of the county court.

The plaintiff read also in evidence, as part of the record, the account current filed by McCoy for settlement, in the county court, and to which his name was signed, without proving the genuineness of his signature.

It was the province of the county court, when the account was presented for settlement, to ascertain whether it was presented by McCoy, or made out by or for him, or whether his signature thereto was genuine or not.  The record stated that he appeared, and filed his account current, and the account was made part of the records of the court, and the fact of his appearance, or the authenticity of the account, were not proper subjects of enquiry in the circuit court, on the trial of the issue to the plea of *nul tiel* record, or on the trial of the other issues made up in the cause.

Issues were also taken to the 1st, 2d and 4th pleas, the case was submitted to a jury, and the plaintiff's damages assessed at $6,261 56.

On the trial, the plaintiff read in evidence, against the objection of the defendants the record of the settlement of McCoy with the county court, the order directing the funds, etc., in his hands to be paid over to his successor, etc., etc.

We have above decided the questions made in relation to the admissibility of the record of the settlement, etc., etc., at the trial before the jury, in determining the points reserved on the trial before the court, on the issues to the plea of nul tiel record—the 6th plea.

The defendants appealed from the judgment rendered upon the verdict, and they insist, in addition to the points above decided, that the jury was not properly sworn.

After judgment was rendered against Stokes on default, and against Silvy for want of further defense upon his demurrer to the declaration being overruled, and after the issues were made up between the plaintiff and McCoy, the record states that they announcing themselves ready for trial, " came a jury, to wit,

etc., etc., who were  duly empanneled  and  sworn to well and truly try  the truth of the breaches,  and arrees the plaintiff's damages, and a true verdict give according to the evidence."

" And thereupon [*continues the record*] the issues of fact made up between said plaintiff  and defendant McCoy,  were submitted to the jury, who after hearing the evidence, etc., etc., returned into court the following verdict :  " We, the jury, do find for the plaintiff, and that the  breaches in the declaration  are true, and that the plaintiff has sustained damages  in the  sum of " etc., etc.

In *State use of Peterson vs. Gibson, et al.* 21 *Ark.* 144, we held that the correct practice (in suits upon  penal bonds)  was, to swear the jury  to  enquire into the breaches,  and assess the damages as to the party in default, as well  as to try the issues and assess the damages as  to the defendants who  pleaded  to the action.

In *McLain vs. Taylor,* 4 *Eng.* 364, the court held that swearing the jury to try the issues joined was necessarily equivalent to swearing them to enquire into the truth of the breaches; and it would seem that the rule ought to work both ways, and that swearing them to enquire into, or try, the truth of the breaches, should be regarded as equivalent to swearing them to  try  the issues, etc.

It is insisted, however, for the  appellants, that two of the pleas of McCoy, upon which issues were made up, were entirely outside of the matter of the breaches alleged.  The pleas referred to  are the *first*  and *second*.  The *first*  alleged that he did not *detain* from the plaintiff the amount of the  penalty  of the bond :  The *second,* that he had paid it to the State.

These pleas were certainly not outside of the general breach of non-payment of the penalty of the bond; and they were not responsive to any other breach alleged.

If they were outside of all of the breaches, as submitted by the counsel for the appellants, they  were  outside of the *case*, and the issues on them immaterial.

It is also insisted that the  declaration is defective in not

averring a special demand upon McCoy, by his successor in office, for the funds in his hands before suit.

It was not necessary to allege a special demand.

When the county court settled the account of McCoy as commissioner, ascertained the balance due from him to the county, and ordered it to be paid over to his successor, his right to hold the money as public bailee was terminated, it was his duty to pay it over to his successor at once, and no demand was necessary before suit.   See *Byrd et al. vs. State use etc.*, 15 *Ark.* 175.

Nor is the objection that the suit should have been brought for the use of McCoy's successor in office well taken.    The statute (*Gould's Dig. Ch.* 101.     *Art.* 3, *sec.* 21,) required the bond of McCoy, as commissioner, to be executed to the State for the use of Jackson county, and the bond sued on was so executed, and it was proper to bring the suit in the name of the State for the county.    The money sued for belonged to the county, as a corporation, and the successor of McCoy was merely entitled to its custody and management as an officer or agent of the county.    *The case of The State vs. Wright,* 8 *Blackf.* 65, cited by the counsel for appellant, was founded on a statute of Indiana, which required the suit to be brought on the relation of the successor in office.

The judgment must be affirmed.